UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

№ 15-CV-636 (JFB)(GRB)

THOMAS DONOHUE,

Plaintiff,

VERSUS

DR. VINCENT MANETTI, ET. AL.,

Defendants.

**MEMORANDUM AND ORDER**
February 24, 2016

JOSEPH F. BIANCO, District Judge:

*Pro se* plaintiff Thomas Donohue ("plaintiff") brings this action against Dr. Vincent Manetti ("Dr. Manetti"), Armor Correctional Health Services ("Armor"), Nurse Jane Brady ("Nurse Brady"), Nassau County Sheriff Sposato ("Sheriff Sposato"), Jane Doe, and John Doe (collectively, "defendants") pursuant to 42 U.S.C. § 1983. Plaintiff claims that defendants violated his Eighth and Fourteenth Amendment rights by administering inadequate medical treatment to plaintiff during his incarceration at the Nassau County Correctional Center ("NCCC").

Defendants move to dismiss plaintiff's claims, arguing that plaintiff fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) because: (1) plaintiff fails to allege personal involvement in the purported violations by the individual defendants; (2) two isolated incidents are insufficient to be deemed a policy or custom for the purpose of § 1983 liability; and (3) plaintiff fails to allege a plausible deliberate indifference claim. For the reasons discussed below, the defendants' motion is granted in part and denied in part.

In particular, the Court concludes that: (1) the motion to dismiss the claims against Dr. Manetti, Nurse Brady, and Armor are denied because plaintiff has alleged plausible claims against those defendants; and (2) the motion to dismiss the claims against Sheriff Sposato, Jane Doe, and John Doe are granted. However, the Court grants plaintiff leave to replead the claims against defendants Sheriff Sposato, Jane Doe, and John Doe if he wishes.

# I. BACKGROUND

## A. Factual Background

The following facts are taken from the plaintiff's complaint filed on February 2, 2015 (the "complaint") (ECF No. 1) and are not findings of fact by the Court. Instead, the Court will assume plaintiff's allegations to be true and, for purposes of the pending motion to dismiss, will construe them in a light most favorable to the plaintiff.

Plaintiff alleges that he entered the NCCC on September 18, 2014, and was assessed by Armor's mental health unit during processing. (Compl. at ¶¶ 5, 8, 10.) Upon arrival, plaintiff had an "active prescription verifiable in a pharmacy of his psychotropic mental health medication," which he had been taking for approximately twenty years to alleviate symptoms of long term depression, acute anxiety, and panic attacks. *Id.* ¶¶ 6-9. Plaintiff alleges that Dr. Manetti, who conducted the assessment, met with plaintiff only "momentarily," told plaintiff "'things are different now and we don't hand out pills anymore – deal with it,'" and denied plaintiff the medication he had been receiving without taking any steps to verify plaintiff's prescription. *Id.* ¶¶ 11, 13. Plaintiff alleges that, as a result, he suffered from "otherwise alleviated long term depression" and "unnecessary panic attacks." *Id.* ¶ 15. Plaintiff alleges that he filed a grievance reporting the care he received from Dr. Manetti, and that Sheriff Sposato "did nothing except support defendant Manetti's inaction merely referring plaintiff back to the Armor Health Care Services." *Id.* ¶ 14. Plaintiff alleges that Dr. Manetti's failure to verify and continue his prescription, and Sheriff Sposato's failure to respond to his grievance deprived him of his constitutional rights. *Id.* ¶ 15.

Plaintiff also alleges that he was denied proper medical care in connection with pain medication he received for a prior neck injury. Plaintiff alleges that a broken neck and its accompanying symptoms (including "chronic and progressive degeneration of other areas, and specific parts of his entire spine, with corresponding degenerative disc disease, anterior spondylosis, bulging discs with annular tears, anterior fixation plate with screws in C5 and C6 vertebral bodies, resulting radiculopathy, sciatica…") caused him to suffer from "constant chronic pain." *Id.* ¶¶ 20-21. Plaintiff was "superficially reviewed by a doctor and nurse" upon his arrival at the NCCC, but no action was taken to address his pain. *Id.* ¶ 23. Plaintiff alleges that after submitting several "sick call slips," he was told that it is "Armor's 'policy' not to 'write' (prescribe) pain medication other than N.S.A.I.D.S." *Id.* ¶ 25. Plaintiff alleges that he was taken by ambulance to the emergency room at Nassau University Medical Center, and upon return, was seen by Armor's medical director, Dr. Marcos, in NCCC's main building. *Id.* ¶ 26. Dr. Marcos prescribed plaintiff with Tramadol, a non-narcotic pain medication, and a supporting pain medication. *Id.* ¶ 27. However, when plaintiff returned to the "satellite jail," he came under the care of Nurse Brady, who allegedly discontinued the medications he was prescribed, and instead provided plaintiff with a medication to which he had an allergy. *Id.* ¶¶ 28-31. Plaintiff alleges that this allergy was clearly indicated on his medical chart, and that Nurse Brady "willfully" ignored the notation when she provided plaintiff with the medication. *Id.* ¶¶ 32-33. As a result, plaintiff suffered allergic reactions, including "severe swelling of his neck suffocating him." *Id.* ¶ 32. Plaintiff alleges that the next day, plaintiff told Nurse Brady about his reaction and she replied, "I wish you would have died." *Id.* ¶ 33. Plaintiff filed a grievance against Nurse

Brady, which he alleges was "accepted," and Nurse Brady is "now no longer permitted to interact or provide health service to plaintiff." *Id.* ¶ 34.

B. Procedural History

Plaintiff commenced this action and filed a Motion for Leave to Proceed *in forma pauperis* on February 2, 2015. Plaintiff's motion was granted on February 11, 2015. On May 14, 2015, the defendants filed a motion to dismiss. Plaintiff submitted his opposition on June 25, 2015, and the defendants submitted their reply on August 12, 2015. The Court has fully considered the parties' submissions.

II. STANDARD OF REVIEW

When a court reviews a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), it must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.,* 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. 556 U.S. 662 (2009). The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (internal citations omitted) (quoting and citing *Twombly*, 550 U.S. at 556-57).

Where, as here, the plaintiff is proceeding *pro se*, "[c]ourts are obliged to construe the [plaintiff's] pleadings . . . liberally." *McCluskey v. N.Y. State Unified Court Sys.*, No. 10-CV-2144 (JFB)(ETB), 2010 WL 2558624, at *8 (E.D.N.Y. June 17, 2010) (citing *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) and *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). Nonetheless, even though the Court construes a *pro se* complaint liberally, the complaint must still "state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (applying *Twombly* and *Iqbal* to *pro se* complaint).

The Court notes that in adjudicating a Rule 12(b)(6) motion, it is entitled to consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part and reversed in part on other grounds sub nom.*, Lentell v. Merrill Lynch & Co., 396 F.3d 161 (2d Cir. 2005), *cert. denied*, 546 U.S. 935 (2005); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he district court . . . could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim."); *Brodeur v. City of New York*, No. 04-CV-1859 (JG), 2005 U.S. Dist. LEXIS 10865, at *9-10 (E.D.N.Y. May 13, 2005) (court could consider documents within the public domain on a Rule 12(b)(6) motion to dismiss).

### III. DISCUSSION

Plaintiff brings claims under Section 1983 for violations of the Eighth and Fourteenth Amendments. Section 1983 does not itself create substantive rights; rather, it offers "a method for vindicating federal rights elsewhere conferred." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To prevail on a claim under Section 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws, (2) by a person acting under the color of state law. 42 U.S.C. § 1983. Plaintiff brings Section 1983 claims against Dr. Manetti, Nurse Brady, Armor, Sheriff Sposato, Jane Doe, and John Doe alleging inadequate medical care.

Defendants argue that plaintiff has failed to adequately plead a plausible claim because: (1) plaintiff fails to allege personal involvement in the purported violations by the individual defendants; (2) two isolated incidents are insufficient to be deemed a policy or custom for the purpose of Section 1983 liability; and (3) plaintiff fails to allege facts sufficient to state a deliberate indifference claim. The Court addresses each argument in turn.

### A. Personal Involvement

First, defendants argue that the claims against defendants Dr. Manetti, Nurse Brady, Sheriff Sposato, Jane Doe, and John Doe must be dismissed because plaintiff's complaint does not allege these defendants' personal involvement in any violation of the plaintiff's constitutional rights.

Because Section 1983 imposes liability only upon those who actually cause a deprivation of rights, "a plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity under § 1983." *Patterson v. Cnty. Of Oneida*, 375 F.3d 206, 229 (2d Cir. 2004); *see Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir. 1987) ("Absent some personal involvement by [a defendant] in the allegedly unlawful conduct of his subordinates, he cannot be held liable under section 1983.").

The personal involvement of a supervisory official may be established by evidence of direct participation in the challenged conduct, i.e., that the supervisory official "commit[ted] the acts personally" or "authorize[d], order[ed], or help[ed] others to do the unlawful acts," *Terebesi v. Torreso,* 764 F.3d 217, 234 (2d Cir. 2014), *cert. denied*, 2015 WL 1757185 (Apr. 20, 2015), or when:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citation omitted); *accord Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003).

At this stage, plaintiff has alleged sufficient facts to state a claim of personal involvement in the purported constitutional violations by Dr. Manetti and Nurse Brady. With respect to Dr. Manetti, the complaint alleges that he evaluated plaintiff "momentarily" on intake and refused to provide plaintiff with the medication plaintiff had been taking (and for which he had an active prescription) for approximately twenty years to treat his depression and anxiety. (Compl. ¶ 15.) Plaintiff alleges that Dr. Manetti told him "things are different now and we don't hand out pills anymore – deal with it" without taking steps to verify plaintiff's alleged prescription. *Id.* ¶¶ 11, 13. With respect to Nurse Brady, plaintiff alleges she ignored notations in plaintiff's chart indicating an allergy to a pain medication, deliberately switched the pain medication he had been previously prescribed by Dr. Marcos, and told plaintiff, "I wish you would have died" when he reported his allergic reactions to her the next day. *Id.* ¶¶ 28-33. Taken as true, these facts sufficiently allege the personal involvement of Dr. Manetti and Nurse Brady. Accordingly, the motion to dismiss the claims against Dr. Manetti and Nurse Brady on this ground is denied.

Courts in this Circuit are divided over whether a prison official's receipt of a grievance letter from an inmate is sufficient to establish personal involvement. *See Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010) ("Courts in the Second Circuit are divided on whether a supervisor's 'review and denial of a grievance constitutes personal involvement in the underlying alleged unconstitutional act.'" (quoting *Burton v. Lynch*, 664 F. Supp. 2d 349, 360 (S.D.N.Y. 2009))); compare *Rivera v. Goord*, 119 F. Supp. 2d 327, 344 (S.D.N.Y. 2000) (holding that plaintiff's assertions that he wrote to certain defendants regarding his medical condition and those complaints were ignored "are insufficient to hold these [defendants] liable under § 1983") (collecting cases) and *McCree v. Messina,* No. 14-CV-5201 (JPO), 2015 WL 4299546 at *5 (S.D.N.Y. July 15, 2015) (concluding that "receipt of grievance letters is insufficient to impute personal involvement" (quoting *Voorhees v. Goord*, No. 05-CV-1407 (KMW)(HBP), 2006 WL 1888638 at *5 (S.D.N.Y. Feb. 24, 2006))) with *Hall v. Artuz*, 954 F. Supp. 90, 95

(S.D.N.Y. 1997) (holding that defendants' awareness of deprivation of medical care, based on letters from plaintiff, sufficiently establishes personal involvement at the summary judgment stage) and *Eldridge v. Williams*, No. 10-CV-0423 (LTS), 2013 WL 4005499, at *5 (S.D.N.Y. July 30, 2013) ("A defendant's personal receipt of a complaint or letter and subjective awareness of the alleged unconstitutional conditions may be one factor that helps establish personal involvement."). In assessing whether the receipt of a grievance can amount to personal involvement, some courts have considered whether and to what degree a defendant responded to an inmate's grievance, distinguishing between, for example, a detailed response that specifically addresses the plaintiff's allegations and a summary denial of a grievance. *See Burton*, 664 F. Supp. 2d at 360; *see also Warren v. Goord*, 476 F. Supp. 2d 407, 413 (S.D.N.Y 2007). Other courts have looked to the nature of the defendant's employment and the degree of that defendant's oversight with respect to the grievance, including whether the defendant acted as a medical or non-medical prison official. *See Sharma v. D'Silva*, No. 14-CV-6146 (NSR) (distinguishing between defendants employed in medical positions and non-medical positions when determining whether plaintiff sufficiently alleged personal involvement); *Hernandez v. Keane*, 241 F.3d 137, 148 (2d Cir. 2003) (holding that the prison superintendent did not act with deliberate indifference when he delegated responsibility for investigating an inmate's medical complaints to other prison staff).

Here, plaintiff does not allege that Sheriff Sposato, Jane Doe, or John Doe personally received, reviewed, or responded to plaintiff's grievance reports. With respect to Sheriff Sposato, plaintiff contends that "although he complained to the defendant Nassau County Correctional Center Sheriff Sposato (grievance)" Sheriff Sposato "did nothing except support defendant Manetti's inaction merely referring plaintiff back to the Armor Health Care Services (grievance exhibit)." Even construing plaintiff's claims liberally, there are no allegations that Sheriff Sposato, a non-medical prison official, routinely reviews grievances filed by inmates. Nor does plaintiff allege, and the attached grievance reports do not demonstrate, that Sheriff Sposato reviewed, investigated, or responded to plaintiff's grievances in this instance. Rather, plaintiff's indication that his filing of a grievance was the equivalent of complaining to Sheriff Sposato suggests that plaintiff seeks to impose liability against Sheriff Sposato solely based upon the supervisory position he holds. It is well established in this Circuit that "supervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on *respondeat superior*." Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003) (citing *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir. 1989)).

With respect to Jane Doe and John Doe, it is difficult to discern the personal involvement plaintiff seeks to allege since the complaint does not contain any facts about what Jane Doe or John Doe did or failed to do. The complaint merely lists Jane Doe and John Doe as Sheriff Sposato's employees, "the grievance clerk[s]." (Compl. ¶ 3.)

Because the plaintiff seeks to impose liability against Sheriff Sposato solely based upon the supervisory position he holds and plaintiff does not allege facts regarding Jane Doe or John Doe's personal involvement in the purported constitutional violations, the defendants' motion to dismiss the claims

6

against Sheriff Sposato, Jane Doe, and John Doe in their individual capacities is granted.

### B. *Monell* Liability

Defendants also argue that the incidents alleged by plaintiff are not sufficient, or numerous enough, to be deemed a policy or custom under *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). (Defs.' Mem. of Law at 8.) As set forth below, the Court concludes plaintiff has alleged a plausible *Monell* claim.

Under *Monell*, a municipal entity may be held liable under Section 1983 where a plaintiff demonstrates that the constitutional violation complained of was caused by a municipal "policy or custom." *Monell*, 436 U.S. at 694-95; *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733-36 (1989) and *Monell*, 436 U.S. at 692-94). To prove a *Monell* claim, a plaintiff must show: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 140 (2d Cir. 2010) (citations omitted). "The policy or custom need not be memorialized in a specific rule or regulation." *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (citing *Sorlucco v. N.Y. City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992)). However, a municipal entity may only be held liable where the entity *itself* commits a wrong; "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691.

"In determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a 'policy' or 'custom.'" *Davis v. City of New York,* 228 F.Supp. 2d 327, 336 (S.D.N.Y. 2002), *aff'd,* 75 Fed. App'x. 827 (2d Cir. 2003). A plaintiff may satisfy the "policy or custom" requirement by alleging "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Brandon v. City of New York,* 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (citations omitted). Under the third method, "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Bd. of the Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *see also Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (noting that a municipality's custom "need not be memorialized in a specific rule or regulation"). Therefore, a plaintiff may establish municipal liability by demonstrating that a policy maker "indirectly caused the misconduct of a subordinate municipal employee by acquiescing in a longstanding practice or custom which may fairly be said to represent official policy." *Miller v. County of Nassau*, 467 F. Supp. 2d 308, 314 (E.D.N.Y. 2006). To prevail on this theory of municipal liability, however, a plaintiff must prove that the custom at issue is permanent and well-settled. *See Praprotnik,* 485 U.S. at 127 (noting that the Supreme Court "has long

recognized that a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage with the force of law'" (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970) (some internal quotation marks omitted))).

Normally, "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]." *Newton*, 566 F. Supp. 2d at 271; *see also City of Okla. v. Tuttle*, 471 U.S. 808, 823-24 (1985) (plurality opinion) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Brogdon v. City of New Rochelle,* 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.").

At this stage, of course, plaintiff need not prove these elements, but still must plead them sufficiently to make out a plausible claim for relief. Although there is no heightened pleading requirement for complaints alleging municipal liability under Section 1983, *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993), a complaint does not "suffice if it tenders naked assertion[s] devoid of further factual enhancement," *Iqbal*, 556 U.S. at 678 (alteration in original) (internal quotation marks omitted). Thus, to survive a motion to dismiss, plaintiff cannot merely allege the existence of a municipal policy or custom, but "must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012). Put another way, conclusory allegations of a municipal custom or practice of tolerating official misconduct are insufficient to demonstrate the existence of such a custom unless supported by factual details

Defendants argue that two isolated incidents are insufficient to be deemed a custom under the *Monell* standard. (Defs.' Mem. at 8.) However, these incidents, together with the comments plaintiff alleges were made by Dr. Manetti and other Armor staff, support an inference of a policy or custom to deny inmates adequate medical care. Plaintiff alleges that Dr. Manetti told him that Dr. Manetti was following Armor's new policies in denying plaintiff the psychotropic medication he was prescribed, saying at the time, "things are different now and we don't hand out pills anymore – deal with it." (Compl. ¶ 11.) Plaintiff also alleges that in connection with his chronic back and neck pain, he was told "by the employees of Armor Health Care that it is Armor's 'policy' not to 'write' (prescribe) pain medication other than N.S.A.I.D.S." *Id.* ¶ 25. Additionally, plaintiff alleges Nurse Brady deliberately gave him medication that would cause him to have an allergic reaction, and told him the day after he experienced that reaction that she wished he had died. *Id.* ¶ 33. Considering the liberal pleading standards applicable to a *pro se* complaint, at this stage plaintiff has plausibly alleged that Armor had a custom or policy of denying inmates adequate medical care. Because plaintiff has sufficiently alleged a *Monell* claim, defendants' motion to dismiss such claim is denied.

8

### C. Deprivation of Rights - Deliberate Indifference to Medical Needs

"The Eighth Amendment forbids deliberate indifference to serious medical needs of prisoners." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (internal quotation marks omitted). "There are two elements to a claim of deliberate indifference to a serious medical condition." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009). "The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious." *Spavone*, 719 F.3d at 138 (internal quotation marks omitted). Analyzing this objective requirement requires two inquiries. "The first inquiry is whether the prisoner was actually deprived of adequate medical care." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). The second inquiry is "whether the inadequacy in medical care is sufficiently serious. This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Id.* at 280. To meet this requirement, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright,* 315 F.3d 158, 162 (2d Cir. 2003). Nevertheless, the Second Circuit has "presented the following non-exhaustive list of factors to consider when evaluating an inmate's medical condition: (1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment, (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." *Morales v. Fischer,* 46 F. Supp. 3d 239, 247 (W.D.N.Y. 2014) (quoting *Brock*, 315 F.3d at 162) (internal quotation marks omitted); *see also Griffin v. Amatucci,* No. 11-CV-1125 (MAD)(TWD), 2014 WL 2779305, at *4 (N.D.N.Y. June 19, 2014) (same).

"The second requirement is subjective: the charged officials must be subjectively reckless in their denial of medical care." *Spavone*, 719 F.3d at 138. Under the second prong, the question is whether defendants "knew of and disregarded an excessive risk to [a plaintiff's] health or safety and that [they were] both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference." *Caiozzo,* 581 F.3d at 72 (alterations and internal quotation marks omitted). In other words, "[i]n medical-treatment cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (internal quotation marks omitted). "Deliberate indifference is a mental state equivalent to subjective recklessness" and it "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Id.* (internal quotation marks omitted). In contrast, mere negligence is not enough to state a claim for deliberate indifference. *See Walker*, 717 F.3d at 125; *Vail v. City of New York*, 68 F. Supp. 3d 412, 424 (S.D.N.Y. 2014). Moreover, "mere disagreement over the proper treatment does not create a constitutional claim," and accordingly, "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eight Amendment violation." *Chance v.*

*Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998); *see also Banks v. Annucci*, 48 F. Supp. 3d 394, 407–08 (N.D.N.Y. 2014).

Here, taking all of plaintiff's allegations as true and construing them in the light most favorable to plaintiff, the Court cannot conclude as a matter of law at this juncture that plaintiff has failed to state a claim under Section 1983 for deliberate indifference to serious medical needs. With respect to plaintiff's claim against Dr. Manetti, defendants argue that plaintiff cannot satisfy the objective prong of a deliberate indifference claim because plaintiff was not actually deprived of adequate medical care and that any inadequacy was not sufficiently serious. Plaintiff states that he has "greatly and unnecessarily suffer[ed] from his otherwise alleviated long term depression" and experienced high anxiety and panic attacks after Dr. Manetti declined to continue his prescription for psychotropic medication. (Compl. ¶ 15.) Plaintiff argues that he has suffered from various mental health diagnoses throughout his life and that until he entered the N.C.C.C. he had been on psychiatric medication for approximately twenty years. (Pl.'s Opp. at 6-7.) He states that without medication, he has difficulty sleeping and experiences anxiety attacks, hopelessness, and depression. *Id*. Plaintiff asserts that his suffering has not been addressed despite making "sick call" requests and filing grievances. (Pl.'s Opp. at 4.) Taken as true, plaintiff's previous treatment for mental health conditions, and the suffering he allegedly experienced without it, provides for a plausible claim that his condition was sufficiently serious to meet the objective requirement of a deliberate indifference claim. *See Colon v. County of Nassau*, No. 12-CV-4466 (JS)(SIL), 2014 WL 4904692, at *6 (E.D.N.Y. Sept. 26, 2014) (finding previous treatment for a psychiatric condition with medication sufficient to satisfy the objective prong of a deliberate indifference claim); *Hamm v. Hatcher*, No. 05-CV-0503, 2013 WL 71770, at *8 (S.D.N.Y. Jan. 7, 2013) ("Courts have repeatedly held that treatment of a psychiatric or psychological condition may present a serious medical need.").

Defendants also argue that plaintiff cannot satisfy the subjective prong because plaintiff "does not allege that Dr. Manetti possessed a culpable state of mind in the denial of mental health care." (Defs.' Mem. of Law at 12.) Plaintiff alleges that Dr. Manetti denied him the medication he had been taking for approximately twenty years to treat diagnosed mental health conditions, telling plaintiff that, due to the "fairly recent turnover of medical services" at NCCC to Armor, "things are different now and we don't hand out pills anymore – deal with it." (Compl. ¶¶ 11, 12.) Drawing all reasonable inferences in plaintiff's favor, plaintiff plausibly alleges that Dr. Manetti was deliberately indifferent to plaintiff's medical needs when he denied plaintiff a medically necessary prescription because of new policies instituted by Armor. *See Colon v.*, 2014 WL 4904692, at *6-7 (denying motion to dismiss deliberate indifference claim where plaintiff alleged denial of medically necessary psychiatric treatments due to budgetary constraints); *Liner v. Fischer*, No. 11-CV-6711 (PAC)(JLC), 2013 WL 4405539, at *21 (S.D.N.Y. Aug. 7, 2013) (denying motion to dismiss deliberate indifference claim because "[i]f, as [plaintiff] alleges, he was denied necessary medication for almost two years [due to 'budget cuts,'] this delay could potentially be a factor in support of a finding of deliberate indifference"); *Stevens v. Goord*, 535 F. Supp. 2d 373, 388 (S.D.N.Y. 2008) ("While disagreements regarding choice of treatment are generally not actionable under the Eighth Amendment, judgments that have

no sound medical basis, contravene professional norms, and appear designed simply to justify an easier course of treatment (in this case, no treatment) may provide the basis of a claim.").

Plaintiff also alleges that he suffered from allergic reactions, "including but not limited to a severe swelling of his neck suffocating him" when Nurse Brady deliberately provided him with a medication to which he was allergic. (Compl. ¶ 32.) Defendants argue that the decision to prescribe alternate medication in place of another does not constitute deliberate indifference. (Defs.' Mem. of Law at 13.) However, plaintiff's allegations go beyond mere substitution of medication; plaintiff claims Nurse Brady knew of his allergy and provided the medication anyway. This allegation is sufficient to adequately plead the objective prong of a deliberate indifference claim. *See Campbell v. New York City*, No. 12-CV-2179 (CBA)(VMS), 2014 WL 4199717, at *5 (May 7, 2014) (finding that plaintiff sufficiently pled the objective component of his deliberate indifference claim by alleging defendant refused to investigate an identified allergy and provided plaintiff with a potentially harmful medication, thereby exposing him to an unreasonable risk of future harm.) In addition, Nurse Brady's alleged awareness of plaintiff's allergy and her alleged statement after plaintiff reported his reaction to her, "I wish you would have died" (Compl. ¶ 33), are sufficient to adequately plead the subjective prong.

For the purposes of a motion to dismiss, plaintiff has sufficiently pled both the objective and subjective elements of his claim for deliberate indifference against Dr. Manetti and Nurse Brady. Accordingly, defendants' motion to dismiss these claims is denied.

IV. LEAVE TO AMEND

Although plaintiff has not requested leave to amend his complaint, the Court has considered whether he should be afforded an opportunity to amend. The Second Circuit instructs that a district court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quotation omitted). Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a party shall be given leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). "This relaxed standard applies with particular force to *pro se* litigants." *Pangburn v. Culbertson*, 200 F.3d 65, 70 (2d Cir. 1999). Nevertheless, "[l]eave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008).

Defendants argue that plaintiff should not be permitted to amend his complaint because any attempt to do so would be futile. However, it is possible that plaintiff may be able to amend the complaint to provide allegations of personal involvement against Sheriff Sposato, Jane Doe, and John Doe. Accordingly, plaintiff is granted leave to file an amended complaint as against these defendants. Any amended complaint shall be filed no later than thirty days from

11

the date of this Order. Plaintiff is cautioned that an amended complaint completely replaces the original, and therefore all allegations and claims against all of the defendants that plaintiff wishes to pursue must be included in the amended complaint. In this complaint, Plaintiff does not provide a description of what Sheriff Sposato, Jane Doe, and John Doe did or failed to do, nor has plaintiff identified how these defendants are liable for the conduct or inaction he alleges. In any amended complaint, plaintiff must, to the best of his ability, set forth the factual allegations to support his claim against these defendants. If plaintiff fails to amend the complaint within thirty days as directed by this order, the Court shall dismiss the claims against Sheriff Sposato, Jane Doe, and John Doe pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## V. Conclusion

For the foregoing reasons, defendants' motion to dismiss is granted without prejudice as to plaintiff's claims against Sheriff Sposato, Jane Doe, and John Doe, and with leave to file an amended complaint. Defendants' motion is denied, however, as to plaintiff's remaining claims against Dr. Manetti, Nurse Brady, and Armor. The Court requests that Magistrate Judge Brown commence supervision of the discovery process.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: February 24, 2016
Central Islip, NY

\*\*\*

Plaintiff proceeds *pro se*. Defendants are represented by John J. Doody, Dale Nicholson McLaren, and Suzanne Emily Aribaken, Lewis Brisbois Bisgaard & Smith, LLP, 77 Water Street, Suite 2100, New York, NY 10005.